## HUMPHRY v. BEESON.

A sheriff's deed is admissible in evidence, although it contains a variance, or mistake, in reciting the execution, and also in referring to the decree upon which the land was sold.

The omission of the officer to state in his return that notice had been served upon the execution defendant, as required by statute, cannot prejudice the rights of a *bona fide* purchaser, nor invalidate his deed as evidence.

The valuation law does not require the officer to sell precisely the quantity of land, necessary at two-thirds its appraised value, to satisfy the execution. If more than enough is sold it will not vitiate the sheriff's deed.

ERROR, *to Muscatine District Court.*

*W. G. Woodward,* for the plaintiff in error.   In several of the positions taken by the defendant below, and which are contained in the bill of exceptions, we were met by the answer, that they could not be taken by, or against, third persons. We wish to examine this answer.   We admit that some errors in process are amendable.   Of some, advantage can be taken only by the party or his privy.   But we hold the above answer too broad, as applied to this case.   The answer was presented with, and supported by, three cases : *Wheaton* v. *Sexton,* 4 Wheat. 503 ; *Bybee* v. *Ashby,* 2 Gil. 165 ; *Swiggart* v. *Harber,* 4 Scam. 364 ; *Wheaton* v. *Sexton,* 4 Wheat. 593 ; 4 Cond. R. 518.   See the statement of facts.

The only question raised concerning the process, or proceedings was, whether a sale by the marshall, after the return day of the writ, was legal, p. 519.   The cause was submitted without argument.   The opinion, and the case too, in short, and no cases are referred to.

What is said about the return is extra-judicial.   The language is to be noticed, and there is a qualification, or proviso, even here.

It was a case in the District of Columbia, on a point on which the state law governs.   The proposition in this case is one of the first impression.   The question was then new; and it is to be doubted whether that court intended it as a general proposition, not restrained by the facts of the particular case.

If taken as broadly as laid down, it is against everything else—against all the books and cases..

I proceed to show that the proposition above referred to is not true, as a general proposition.   A distinction is made between the "erroneous" and the "irregular," which is observed in some of the cases, and in some the language is not used strictly.   *Woodcock* v. *Bennett,* 1 Cow. 734 ; Gra. Prac. 390 ; *Read* v. *Markle,* 3 John. 525.   The irregularity need not appear on the face of the process—it may appear from extrinsic facts.

Humphry *v.* Beeson.

I shall now show that there are errors, or irregularities, both in the process, in its issuing, and in the proceedings under it, which are held void. In ejectment, the party may show the want of a *venditioni exponas. Porter* v. *Neelan,* 4 Yeates, 108; *Glancey* v. *Jones, ib.* 213. In *Bond* v. *Donsdale,* 2 Binn. 80, a *venditioni exponas* issued irregularly, and the court allowed the objection to be taken collaterally, and held the purchaser acquired no title. A sale, even to an innocent purchaser, under irregular process, is void.

1 Cow. 735. In this case execution issued against a defendant who died after judgment, but before execution.

If a judgment has been paid, an execution issued on it is void. *Sherman* v. *Boyce,* 15 John. 443; *Swan* v. *Saddlemire,* 8 Wend. 681; *Rud* v. *Staats, et al.,* 7 Wend. 426. This seems to be true, whether paid before or after execution issued. *Carter* v. *Simpson,* 7 John. 535, and held a vendee, does not lose his property by reversal. "But no case admits a title in the purchaser, when the officer acted without authority." Commented on in *Jackson* v. *Cadwell,* 1 Cow. 640; and same doctrine is quoted in Gra. Prac. 365, citing *Swan* v. *Saddlemire,* 8 Wend. 681. Kent, J. held a *fi. fa.* tested out of term, void.

Suppose a judgment, death of plaintiff, execution, and sale, would it not be void? Gra. Prac. 666; 1 Cow. 218. An execution irregularly issued, is a nullity—otherwise, if erroneous. 3 John. 523. A party against whom a judgment is, appeals from the clerk on the taxation of costs; clerk has no right to issue execution till settled, and execution issued is void. *Winslow* v. *Hathaway,* 1 Pick. 211.

An application for a new execution, on the ground that a former had been returned satisfied by a levy on land, which was defective, and by which no title was acquired, was substantially an action of debt or *sci. fa.,* and such execution, being granted on motion without the proper notice, is void. *Williams* v. *Cable,* 7 Conn. 119.

When a levy is made upon land, and the *fi. fa.* be so returned, if a second *fi. fa.* be then issued before the first levy

is disposed of, the second *fi. fa.* is void. *Arnold* v. *Fuller*, 1 Ham. 458. If a sheriff sell land on a *fi. fa.*, issued and levied after defendant's death, the sale confers no title. *Cartney* v. *Reed*, 5 Ham. 221 ; *Massie's heirs* v. *Longe*, 2 *ib.* 287.

A sale, under execution after judgment is satisfied, is void, 6 Wend. 367, and the officer is liable as a trespasser. Execution held void for want of a return-day, and a sale of land upon it, was held to pass no title. *West* v. *Hughes*, 1 Har. and J. 6. It was held a fatal objection to an execution, in Pennsylvania, that it issued more than a year and a day after judgment, without a *sci. fa.* 3 Wash. C. C. 134.

The foregoing cases relate to errors, or irregularities, in the process—its form, qualities, or manner of issuing. The following relate to the proceeding under the process. In New Hampshire, when an execution is extended on land, the appraisers must be resident in the county where the land is, otherwise nothing will pass by the extent. *Simpson* v. *Coe*, 3 N. H. 85 ; *Libbey* v. *Copp*, *ib.* 45.

In Maine, it is essential to the validity of the return of an execution, that it should show that the debtor was duly notified to choose an appraiser. *Means* v. *Osgood*, 7 Greenl. 146.

In Vermont, a return must be made within the life of the execution, when extended on real estate, or the whole proceeding is void. *Hall* v. *Hall*, 5 Verm. 304.

In Massachusetts, when an execution is levied on real estate, the return must show by whom the appraisers were chosen, otherwise the levy is void. *Allen* v. *Thayer*, 17 Mass. 299. If the officer return that he appointed two of the three appraisers, without returning that the debtor neglected, or refused to choose one, the levy is void. *Eddy* v. *Knap*, 2 Mass. 154 ; *Whitman* v. *Tyler*, 8 *ib.* 284. If the appraisers deduct the amount of a previous attachment in a suit pending, considering it as an incumbrance, the levy is void. *Barnard* v. *Fisher*, 7 Mass. 71.

The officer is bound to notify the debtor, that he may choose an appraiser ; and it must appear in the return that he has

given such notice.    *Blanchard* v. *Brooks*, 12 Pick. 47 ; *Stanton* v. *Bannister*, 2 Verm. 464.

The appraisers must be, and they must appear by the return to be, residents in the county, else nothing passes by the extent.    *Rix* v. *Johnson*, 5 N. H. 520; *Libbey* v. *Copp*, 3 *ib.* 45.    Execution against several defendants is levied on lands of which they were severally seized; the land of each must be severally appraised, otherwise the extent is void.    *Burnham* v. *Aiken*, 6 N. H. 306.

A levy is void in Connecticut, when one of the appraisers is tenant to the execution debtor.    *Mitchell* v. *Kirtland*, 7 Conn. 229.

A sale without appraisement, where the law requires it, is void.    *Patrick* v. *Ousterhout*, 1 Ham. 27 ; 3 *ib.* 190 ; *Curtis* v. *Doe*, Breese, 102.

A levy on goods by *fi. fa.*, after the return day is past, is void.    *Devoe* v. *Elliott*, 2 Cai. 243 ; *Wheaton* v. *Sexton*, 4 Pet. Cond. 518.

An inquisition cannot be supported, unless the defendant has notice of the levy, or the time and place of holding the inquest.    *Heydrick* v. *Eaton*, 2 Binn. 215.    When the sheriff levies on and sells more land than is necessary to satisfy the execution, (the land being susceptible of division,) he exceeds his authority, and the sale is void.    *Stover* v. *Boswell*, 3 Dana, 232.    A sale, under execution, after the judgment has been satisfied, is void.    *Chiles* v. *Bernard*, 3 Dana. 95 ; *Jackson* v. *Anderson*, 4 Wend. 474.    If, by reason of unlawful charges, too much land is taken and set off on execution, the proceeding being an entire and indivisible act, is wholly void.    *Beach* v. *Walker*, 6 Conn. 190.

If the return state that A, B, and C were appraisers, when in fact A, B, and D were, and signed the appraisal, the levy is void.    *Nye* v. *Drake*, 9 Pick. 35.

If, by the return of a levy to the town-clerk's office, it appear to have been for a larger amount than the execution, no title passes by such levy, although the return on the original execution appears to be correct.    The record would be notice

of a void levy only.    *Skinner* v. *McDaniel*, 5 Verm. 539.    In the sale of real estate on execution, the recording of the execution, before it is delivered to the sheriff, is essentially requisite to the validity of the execution, under the statute of New Jersey.    *Elmer* v. *Burgin*, 1 Pennington R. 186.    Sheriff levies under a *fi. fa.*, and returns the property unsold for want of buyers, then goes out of office, a *vend. ex.* must issue to him, and not to his successor, and if to his successor, all his acts under it are void.    *Purl* v. *Duvall*, 5 Har. and J. 69.    A levy, after the term to which execution is returnable, is void.    *McElwee* v. *Sutton*, 2 Bailey, 361.

A sale of goods should be at the place where the goods are, and a sale six miles distant from the goods was held irregular and void.    *Cresson* v. *Stout*, 17 John. 116.

In *Bybee* v. *Ashby*, 2 Gil. 163, the court say, " The purchaser is bound to inquire into the power and means by which the property is subjected to the sale, and will acquire no right to the land when the sheriff sells without legal authority," and cite 10 Pet. 458; 2 Yeates, 86; 2 John. 280; *Hinman* v. *Pope*, 1 Gil. 131.    In 4 Scam. 370, is a recognition of the point at which we are aiming.

The sheriff cannot sell, on an execution, more land than enough to satisfy the execution and his commission.    *Davidson* v. *McMurtry*, 2 J. J. Marshall, 68.

A sheriff sold certain real estate, on execution, to B, who failed to pay the purchase-money; a few days afterwards, without having adjourned the sale, and without advertising again, he re-exposed the property to sale, and sold it to C, who had notice of the facts.    Held that the sale to C was void.    *Givan* v. *Doe*, 5 Blackf. 260.

Why should there be held a great difference between tax-sales, and sales on execution?    The only difference is in the authority.    In the principle of the proceedings there is none.

The second case relied upon by the plaintiff below, was *Swiggart* v. *Harber*, 4 Scam. 364.    *Sci. fa.* was brought by plaintiffs *v.* J. Cornelius, to foreclose a mortgage and sell the land.    Pending the suit, Cornelius died, and Beaird, adminis-

Humphry *v.* Beeson.

trator, made a party,—default and judgment against adminis-
trator. It was a general judgment, upon which a special exe-
cution issued to sell the lands of Cornelius, which were mort-
gaged. The judgment should have been special; and the
execution was special in accordance with the nature of the
case, and what the judgment should have been. There is no
objection to the nature or qualities of the execution, nor to the
proceedings under it—the objection is rather to the judgment.

Page 374 cites 2 Pet. Dig. 269. There is nothing in this,
except a citation of 1 Overton, 165; when it was held that a
stranger cannot object to the validity of a judgment under
which land is sold. And on same page the court cite *Thomp-
son* v. *Phillips*, 1 Bald. 266. The only objection was to the
process. The case was under a peculiar statute and proceed-
ings. When the sheriff acknowledged the deed in court, where
all the proceedings were adjudicated, and all was considered as
settled by the judgment of the court, p. 271.

Other cases cited in *Swiggart* v. *Harber* : 5 Pet. 369; this
case does not seem to be quite as stated by the Illinois court.
It is a citation of one of Lord Hardwick's decisions. The
case supposes a good judgment, but a wrong process. *Bissell*
v. *Kipp*, 5 John. 100. Action against sheriff, for escape.
Held that sheriff should not be permitted to take advantage of
a variance between the judgment and execution, for he had
acted under it. The other cases are all cases against sheriffs,
upon the principle that the sheriff having acted under process,
cannot excuse his malfeasance or misfeasance, by showing mere
defects in the process.

*Bryan* v. *Smith*, 2 Scam. 49, cited in 4 Scam. 367, was a
case of variance in the costs only, created by lawful increase,
by which the costs in a prior execution were less than those in
a subsequent one.

Neither these cases collectively, nor any of them singly, go
the length of the principle laid down by the court in *Swig-
gart* v. *Harber*. This case lays down principles, going alto-
gether beyond the call of the case. It is not a well reasoned
case.

The third case cited against the defendant below, was *Bybee* v. *Ashby*, 2 Gil. 151. There is little in it to point for plaintiff in this cause.

An execution issued to the sheriff of Knox county, and was levied and executed by the sheriff of Fulton county, in his county. The court below amended it. Held to be error, that it could not be amended, and purchaser took no title.

We now come to our exceptions and errors.

Exception 1. Variance between deed and execution. 2. Variance between deed and decree. The deed is *prima facie* evidence of proper proceedings. *Rev. Stat.* 630. But we may impeach it by showing papers or proceedings erroneous. Defendant denied the existence of such an execution or decree as recited in the deed, and these are shown to be the only ones. These are not the ones recited. If recited, the recital should be true.

It is a settled and inflexible rule, that the execution must follow the judgment, and be warranted by it. 1 Cow. 741; 2 Paine and Duer's Prac. 295.

2. No notice appears in the officer's return to have been given to the execution defendant, as required by *Rev. Stat.* p. 633, § 9. It is a general and well established principle, that where a title is to be divested, or created by statute, all the requirements of the statute must be observed; and must appear to be pursued. This is an important matter to a defendant, especially in a case of a mortgage where specific property is first pledged. He should be informed that the mortgaged property has not paid the debt. How can the officer say that defendant will not pay the balance? How far can we dispense with the required proceedings of the officer, in justice and safety to a defendant?

3. That too much land was taken. The land was divisible. The agents had actual notice. They levied on an eighty-acre lot, part of defendant's farm. They required sixty-three and a half acres, at two-thirds the appraisal, and took the whole sixteen and a half acres, more than enough. They required $256, 72. They took, at full appraisal, $480; $224 too

Humphry *v.* Beeson.

much; at two-thirds appraisal, $66 too much; or $320, in all at two-thirds.

Several authorities hold this proceeding fatal on general principles. When a sheriff levies on and sells more land than is necessary to satisfy the execution, (the land being susceptible of division,) he exceeds his authority, and the sale is void. 3 Dana, 232. If by reason of unlawful charges, too much land is taken and set off on execution, the proceeding, being an entire and indivisible act, is wholly void. 6 Conn. 190.

The sheriff cannot sell on an execution, more land than enough to satisfy the execution and his commission. 2 J. J. Marshall, 68; 1 Binn. 61. Many cases recognize the distinction between acting under the authority of a court of competent jurisdiction, and yet without conformity to the law; and acting without the authority of a court, and at the same time without conformity to law. And our *Rev. Stat.* p. 630, § 3, settles this matter. Notice the *proviso*, and for the force of it, see 10 Pet. 474.

If not divisible, it should appear in the appraisers return. Who is to say it is not? The appraisers. And even if the sheriff may be the judge, it must appear in his return as explanatory. The word divisible is not to be taken in its strictest sense, for then any thing is divisible. This objection is fatal even against a third person.

But if there be any doubt upon this, then the agents of Beeson had actual notice. And a purchaser having notice of the irregularity, stands as the party. 1 Cow. 641; 4 Wend. 479; 8 *ib.* 681; Gra. Prac. 365, 390.

The cases use the language, " *bona fide* purchaser without notice," and show that one with notice of irregularity is not a *bona fide* purchaser. Gra. Prac. 365, 390; 8 John. 361; 8 Greenl. 207; 3 J. J. Mar. 208; *Jackson* v. *Cadwell*, 1 Cow. 641, 2; 5 Blackf. 260; 1 Cow. 711; 2 Bibb. 401.

And a party is held responsible for irregularities in proceedings, and sometimes in process. 1 Cow. 622, 645; 5 Pet. 369; 2 U. S. Dig. p. 315, § 6; 2 Gil. 166; 2 Blackf. 1.

And Paine and Duer's Prac. 295, holds a purchaser affect-

ed by irregularity in proceedings, where he has notice, and cites 1 John. Ca. 143 ; 1 John. 45 ; 8 *ib.* 361 ; 13 *ib.* 97 ; 1 Gal. 419 ; 1 M. and S. 425.

*R. P. Lowe* and *S. Whicher*, for the defendant. This case is here to reverse a judgment in an action of right obtained by the defendant against the plaintiff in error in the district court of Muscatine county.

The plaintiff below claimed title deduced from the sheriff of said county, founded upon a judicial sale, made on the 14th day of November, 1845, by virtue of an execution.

The execution was issued upon a judgment for the foreclosure of a mortgage rendered at the October term of the Muscatine district court, 1844, which judgment of foreclosure for the sum of $ 803 12, was in favor of one Jeremiah Burge, and against Charles Mattoon.

The plaintiff below farther showed that Mattoon derived title to the premises in controversy from Humphry, the defendant below. Upon this evidence, together with Humphry's possession of the premises at the time of the commencement of the suit, and Mattoon's possession at the time of the execution of the mortgage and rendition of the judgment, he rested his right to recover.

The defendant relied upon the same source of title, by virtue of a deed of conveyance from Mattoon to himself, dated the 25th November, 1845 ; also he relied upon a vendor's lien, which was declared on the 25th November, 1845, by a decree of the court, in which Mattoon and Humphry were alone parties to the proceedings.

The court will perceive that, in point of time, the defendant's title, although of the same source, is of younger date than that of the plaintiff's below.

But the defendant below claimed to have impeached the plaintiff's title, and insists upon the same objections in this court, for reasons :

1. That the sheriff's deed, offered by plaintiff, misdescribes the execution under which the sale was had, as to the amount

of money which the officer was commanded to make. And there was variance between the amount of the judgment as recited in the sheriff's deed, and the judgment in fact recovered by Burge against Mattoon, under which the execution issued and the property was sold.

2. That sheriff's title was not valid, because it did not appear from the officer's return that he had given notice to the execution defendant, as required by the 9th section of *Revised Statutes,* 155.

3. Because the sheriff sold more land than was necessary to satisfy the execution.

The above defects or objections could alone be corrected or taken advantage of by the parties to the proceedings or suit in which they occurred, as by writ of error or motion to set aside, &c. With the proceeding, whether erroneous and irregular or not, Burge and Mattoon have chosen to rest satisfied. It is incompetent for Humphry, a stranger collaterally in another action, to draw in question the correctness of such proceeding, for the purpose of invalidating a title deduced from a judicial sale under said proceeding; unless the irregularity complained of goes to the jurisdiction of the court rendering judgment, or to the execution, or to the levy, and are of such a character as to render the proceeding a nullity; as, for instance, if there was a sale without a levy, or the right kind of an execution, or under a judgment rendered by a court having no jurisdiction.

But in the case of Burge against Mattoon, it is not pretended that the court had not jurisdiction; nor is it pretended that the execution is not valid, or of the right kind; nor is it denied that there was a levy, sale, and deed. These being the only things which a purchaser at a judicial sale need look to; if they exist, they constitute the citadel of his title; all other questions are between the parties to the proceeding. *Buckmaster* v. *Carlin,* 1 Scam. 104.

But in the case of *Swiggart* v. *Harber,* 4 Scam. 364, the doctrine is laid down still stronger for us, and discusses at great length and ability, what irregularities in the sale of land

14

on execution will, and what will not, vitiate the sale and affect the purchaser's title. It is decided that if these irregularities are not corrected by the court from which the process issues, and such court is not called upon by the defendant in the execution to set the proceeding aside, they cannot be disturbed by any one else in a collateral proceeding.

This case also decides that a variance between the judgment and execution was immaterial.

No error or irregularity in the judgment or execution should affect the purchaser's title at sheriff's sale. *Armstrong* v. *Jackson*, 1 Blackf. 212.

The intendment is in favor of the purchaser, that the preliminary proceedings were all correct. Finding a judgment, levy, and deed, the purchaser may stop upon the legal presumption that all the preliminary proceedings were correct.

The purchaser must look to see there is a judgment, on which to found an execution, that an execution has been issued and a levy made, but is not bound to inquire into the regularity of all the ministerial acts of the sheriff before or after sale. *Allen* v *Parish*, 3 Ohio, 191.

After jurisdiction is once acquired, however irregular or erroneous their proceedings may be, they cannot be collaterally impeached; and they conclude all persons, unless annulled by appeal or writ of error. A vast body of authorities bearing upon this point may be found collected in 3 Cowan and Hill's Notes, 803; 3 Ohio R. 553; 5 *ib.* 294; 6 *ib.* 255; 9 *ib.* 18, 117; 6 Peters, 164; *Vorhees* v. *Bank of U. S.;* 10 Peters, 449. This last recited case is full and very conclusive on most of the points in this case.

What is sufficient for the officer is also sufficient for the purchaser under a judicial sale. If the sheriff be not a trespasser, his sale transfers the property. 12 Ohio, 253.

If the court has jurisdiction of the case, the parties, and power to order the sale by execution, a sale so made, and a deed so acknowledged, cannot be set aside in a collateral action. An objection to such sale must show a want of power in the court. Irregularities must be corrected by the court

which issues the process. Erroneous proceedings must be reversed on a writ of error, or they are binding. *Thompson* v. *Phillips,* 1 Bald. 246.

The misrecital of a judgment in a sheriff deed is not material; if it appear in fact that a sale was under a subsisting judgment and execution, a recital not being a material part of the deed. *Jackson* v. *Streeter,* 5 Cowen, 529; *Craig* v. *Vance,* Overton, 209.

The recital of an execution in a sheriff's deed is not necessary; and a mistake or variance in the recital is not material, and does not affect the validity. *Jackson* v. *Pratt,* 10 John. 381; *Jackson* v. *Jones,* 9 Cow. 182.

The foregoing authorities show, that if the judgment and execution, or judicial sale, under which we derived title to the land in controversy, were irregular or erroneous, still they are not to affect the title of a purchaser who is a stranger to the proceeding under which the sale was had; nor can a stranger to the proceeding collaterally take advantage of the same, or the ministerial acts of the sheriff.

But we deny that there was any irregularity in this case. Consider for a moment the objection, that the sheriff sold more land than was necessary to pay the debt. The 26th section of the valuation law contemplates the sale of more property than will pay the debt, because it provides for the payment of the overplus to the defendant in the execution. Again, it could not have been the intention of the legislature to authorize the sale of land in less tracts than the smallest subdivision of land under the acts of congress, say forty acres, because it would be productive of great mischief and injury to all concerned, leaving small fractions of land in long, narrow strips, that would be useless to any one; the same inconvenience would be felt in the sale of town property. The judgment debt, at two-thirds of its appraised value, might cover the whole lot, except two or three feet on one side, yet what would this be worth to any one.

It is submitted whether the sheriff is not the sole judge, under the responsibilities of his oath and his bond, of the

quantity of land necessary. He, with the appraiser, must go to the land and view it, and appraise it. If they find that an eighty-acre piece of land is worth $1,000, it by no means follows that either half of the same tract is worth half that money . Here it is said that sixteen acres too much was taken. How does counsel know this? He undertakes to prove it by the rule of three. Common observation will satisfy us that this rule is not applicable to the division of land, though it might, perhaps, be well addressed to a tape-seller or an apothecary; or to the dealer in any other commodity, in which location forms no element in the calculation of value. Take sixteen and two-third acres from the side, end, or corner of an eighty-acre tract, and it would be sure to injure the value of the small piece, as compared with the whole; and would be quite likely to depreciate the comparative value of the sixty-three and one-third remaining acres.

If the sheriff, who has seen the land, is not the proper judge of quantity, who is the judge? Not the appraisers, for the law does not require it of them. The sheriff makes the levy, and then calls an inquest of value. This inquest knows nothing of the amount of money which the sheriff is commanded to make; nor is it a matter of fact which the court can determine. The only remaining forum is the jury before whom the case was tried. If they are the proper judges of quantity, then they have passed upon it, and found for plaintiff below; and their finding is conclusive.

The law will presume that the officer did his duty in giving notice to the defendant in the execution.

*Opinion by* GREENE, J.    Richard Beeson commenced this suit by an action of right, for the west half of south-west quarter of section twenty-seven, in township seventy-seven north, range two west, being in the county of Muscatine. A declaration and plea to the merits were filed in the form prescribed by the statute regulating the action of right, and the cause was submitted to a jury. On the trial, the plaintiff offered in evidence a deed from the sheriff of Muscatine county, conveying

Humphry *v.* Beeson.

to him the land in dispute. It appears that the sale, upon which the sheriff's deed was given, had been made to satisfy a judgment rendered in October, 1844, in favor of Jeremiah Burge, against Charles Mattoon. The plaintiff then gave in evidence the record of a deed from Humphry to Mattoon, to show that the title was in him at the rendition of the judgment; and testimony was also offered, tending to show a possessory title.

1. The defendant objected to the admission of the sheriff's deed, first offered in evidence, on the ground of a variance in describing the execution and in reciting the decree upon which the execution issued. The judge ruled upon this point, that the discrepancies were not material and could not invalidate the deed, if the jury believed that it was derived from and made under the decree.

2. The defendant then objected to the sheriff's returns on the execution, as it did not appear that notice had been served upon the execution defendant as required by statute.

3. He then showed by the returns, that the sheriff, in satisfaction of the execution, had levied upon and sold more land than was necessary, at two-thirds its appraised value, to satisfy the execution. That the land was level, and had no other improvement than an inclosure of about fifty acres, with thirty acres of the field in cultivation, and that the agent of the purchaser had notice of the fact. It was proved that the only objection to dividing the property was, that it would more or less depreciate its value. The defendant claimed, and desired the court to rule, that by disposing of more land than was necessary to satisfy the decree and costs, under the circumstances, rendered the sale of the sheriff irregular and void; but the judge ruled otherwise.

Other questions arose upon the trial of this cause, but as they have not been urged by counsel, and cannot affect the decision, it is not necessary to notice them.

Verdict and judgment for the plaintiff in the court below. The three objections above referred to, are urged by the plaintiff in error to reverse the judgment. As the three points

urged, and the law pertaining to them are ably reviewed by the arguments of counsel, it is only necessary to give a brief statement of our decision upon them.

1. The variance complained of is merely in figures, in reciting the amount to be made by the execution, and the amount of the decree. We have no evidence before us, in a legitimate form, showing the alleged variance. Our statute declares the deed of the officer, selling the land, to be *prima facie* evidence of the regularity of his proceedings. *Rev. Stat.* p. 630, § 3. But conceding the variance to be as great as is claimed by plaintiff's counsel, it cannot produce the effect of invalidating the sale. The recital of the execution in a sheriff's deed is not essential to its validity; and, as a consequence, any variance or mistake in such recital, can have no impairing influence. The authorities cited by defendant's counsel we regard as conclusive upon this point. Such a variance should be regarded as immaterial, so long as the origin of the deed is clearly traceable to an authentic source; and the irregularity complained of can work no injury to the parties concerned.

In *Perkins* v. *Dibble,* 10 Ohio, 433, it was held that a sheriff's deed, which recites enough to show his authority, is good, even if it does not contain all that is required by statute. So also in *Armstrong* v. *McCoy,* 8 Ham. 128.

In *Huggins* v. *Ketchum,* 4 Dev. and Batt. 414, a sheriff's deed, containing an erroneous recital of the power under which the sale took place, was held to be good; and it was also held that it must be presumed until the contrary is shown that the officer sold the property under the appropriate execution.

That a variance between the deed and execution, or a misrecital in the deed, is not a valid objection to its admission in evidence; see, besides the authorities cited by counsel, the case of *Cherry* v. *Woolard,* 1 Iredell, 438; *Driver* v. *Spence,* 1 Ala. 540.

2. Notice to the execution defendant is an essential prerequisite to a sale (*Rev. Stat.* p. 633, § 9); but we are by no means satisfied that the notice must appear in the officer's returns, in order to render a sale valid. It is true, that the

returns should show service of the requisite notice, and the officer is negligent and censurable who omits so important an item of duty; but still, it is not such an irregularity as will justify a court in setting aside a sale, made to an innocent purchaser, who had no notice of such irregularity; even if the execution defendant had not been notified of the sale.

Though the requirements of the law should be substantially observed, when the title is to be divested; still, the rights of *bona fide* purchasers should also be protected. Mere omission, or irregularity in the proceedings of the officer, cannot impeach his deed, when supported by an operative and unsatisfied judgment. Besides, even though the sheriff's returns do not state the fact, the notice will be presumed till the contrary appears; unless the question is raised on a motion to quash the execution, or set aside the sale, before the deed is executed and the purchase-money paid.

In *Lawrence* v. *Speed*, 2 Bibb, 401, it was determined that a sale of property, on execution, is not rendered void by the failure of the sheriff to advertise according to law, unless such failure was through fraud, of which the purchaser had knowledge. So far have courts gone in protecting the rights of *bona fide* purchasers, that they have adjudged the property to them, although the judgments from which the sales proceeded were afterwards reversed, *Reardon* v. *Searcy*, 2 Bibb, 202; *Coleman* v. *Trabue*, *ib.* 518; *Sneed* v. *Reardon*, 1 A. K. Marsh. 217. And in *Doe* v. *Heath*, 7 Blackf. 156; it was determined where a purchaser, at a sheriff's sale, had paid his money, and received a deed for the land, that his purchase could not be prejudiced by the imperfect return of the sheriff, nor by his making no return at all.

3. It is objected that more land was sold than was necessary to satisfy the execution, and that the purchaser had notice of the fact. We see nothing in this proceeding inconsistent with the valuation law, under which the sale was made. In the third section, (*Rev. Stat.* p. 630,) we find it "provided, that said sheriff, or other officer, making such levy, shall, whenever the said lands are divisible, levy on such part, and so

Humphry *v.* Beeson.

much thereof, as may be sufficient to satisfy such execution.''
The 26th section of the same act provides, that whenever the
land sells for more than enough to satisfy the execution, with
interest and costs accruing thereon, the overplus shall be ten-
dered to the defendant. Thus it appears that the sheriff is
directed to levy upon land enough to satisfy the execution;
and if it sell for more than enough, to refund the excess to the
defendant. When the levy is made, the officer cannot tell
how much will be necessary to satisfy the interest and cost on
the execution, especially when the day of sale may be postponed
two or three times; or in case the property should not sell, or
be taken by plaintiff in execution, at two-thirds its appraised
value, the property should "not be offered for sale again on
said execution, order, or decree, for the term of twelve months
thereafter." *Rev. Stat.* p. 630, § 3. Had this sale been
thus delayed, it is probable that the property levied upon, at
two-thirds its value, would not have amounted to more than
enough to satisfy "execution, interest, and costs." As it is
impracticable for the officer to know the precise quantity of
land necessary to satisfy an execution; and, as the statute
clearly does not contemplate that the exact amount, only,
shall be levied and sold, we are led to the conclusion, that
this objection is not well founded. We believe, under this
statute, the officer is authorized to levy upon land enough;
and if he should levy upon, and sell a little more than enough
to satisfy the execution, his proceedings are not therefore
nugatory; but, in levying upon lands, the officer must be re-
strained by reasonable bounds; and if, in levying upon con-
gressional subdivisions of land, there should be an excess over
all execution claims, of the least legal subdivision, it should
not be sold; or, if sold, such excess might be released to the
execution defendant, on motion in the court below.

With a proper regard to the legal rights of the *bona fide*
purchaser in this case, we cannot do otherwise than affirm the
proceedings of the court below.

                                        Judgment affirmed.