JOHN SMITH v. WILLIAM M. ALLEN, impleaded, &c.

On appeal from a judgment of the Marine or one of the Justices' Courts, if an execution has been issued from that court, and the officer has levied upon the defendant's goods, the giving of an undertaking on appeal, pursuant to § 357 of the Code, and the service of a certified copy on the officer, arrest the proceedings in the state in which they are at the time of such service.

But the levy is not thereby discharged, nor can the appellant require that the goods levied upon be returned to him before the appeal is disposed of.

The practice, under and before the Revised Statutes, on the allowance of writs of error, in respect to their effect upon the issuing of execution, or upon further proceedings where execution has been issued, reviewed.

Effect, in reference to the issuing of execution or to further proceedings where execution has been issued, of the allowance of a *certiorari* to the court of a justice of the peace, under the Revised Statutes.

A respondent, who succeeds where an appeal has been taken from the Marine or one of the Justices' Courts, is entitled to the *judgment* of this court in affirmance of his judgment.

Whether the whole judgment, with the costs of appeal, can be collected by execution issued out of this court, when the transcript of the original judgment has not been filed with the county clerk; *quere?*

*It seems*, that the respondent, on affirmance, is not *required* to issue execution out of this court to collect the amount of the original judgment, and that there is no difference between the Marine and Justices' Courts, in respect to the effect of an appeal upon the power of the court below to enforce its own judgment.

THIS was an action in the nature of trover, to recover the value of property levied upon by a constable, under an execution issued upon a judgment of the Marine Court, in favor of one of the defendants, against the plaintiff. The date of the judgment, execution, and levy was September 15, 1851. On the 18th, while the property was in the constable's hands,

an appeal to this court was perfected, and a copy of the undertaking, provided in §§ 355 and 356 of the Code, was certified by the court below, and served upon the officer holding the execution, in pursuance of § 357. The property was at the same time demanded from him; but, under the legal advice and with the alleged co-operation of the defendant Allen, the officer retained it.

The appeal resulted in a reversal of the judgment; but there was no evidence of any renewed demand of the property from either of the defendants after such reversal. On the trial of this case, the plaintiff insisted, as the ground of recovery, that he was entitled to an immediate re-possession of the property upon delivering the undertaking to the officer.

The action was brought against the execution creditor and his attorney and the constable. The cause was tried by the court at special term, and judgment ordered for the defendants, upon the ground, that at the time of the demand made by the plaintiff, the constable was in the lawful possession of the goods, and had a right to retain them under his levy, and that after the appeal was determined, no demand of the goods had been made. From this judgment appeal was taken to the general term.

*J. Wilson Green,* for the plaintiff.

*William Allen,* for the defendant Wm. M. Allen.

WOODRUFF, J.—It is not doubted by the counsel for the respondent in this case, that all proceedings under the execution issued on the judgment rendered in the Marine Court were stayed, by perfecting the appeal and the service of a certified copy of the undertaking thereon upon the officer who held the execution. In this respect the effect of such service is declared in the Code, (§ 357,) in almost the very words employed in the Revised Statutes in declaring the effect of the allowance of a writ of error and an order to stay proceedings upon such judgment. (2 R. S. 597, § 30.)

Nor that before the Revised Statutes, if a writ of error were sued out within four days after judgment, or within such time as might be allowed by an order of court extending the time, it operated as a *supersedeas* of the execution, according to the cases of *Jackson* v. *Schauber*, 7 Cowen, 417, 490 ; *The People* v. *N. Y. Common Pleas*, 1 Wend. 81, and note ; and *Mitchell* v. *Thorp*, 5 Wend. 288. And it appears from those cases, that an order would be granted by the court setting aside an execution which was issued and served within that period, if the writ of error was brought and bail in error duly perfected. While in *Beekman* v. *Bemus*, (7 Cowen, 418,) it was, on the other hand, held, not only that (in conformity with the previous cases) a writ of error issued after the four days did not supersede an execution, but that where the four days had elapsed without any order giving time or staying the effect of the judgment in this respect, and an execution had been issued and levied, the court had no power to interfere therewith nor stay proceedings thereon.

The Revised Statutes, obviously having in view this distinction between the effect of the writ issued within the four days and a writ issued after the four days have elapsed, and the want of power in the court to stay proceedings in the latter case, enact a uniform rule, applicable to all writs of error *whenever* issued : To wit, that upon the allowance of a writ of of error, the officer should (if the writ be intended to operate as a stay of execution, and the proper bond be executed) endorse on the writ an order to stay proceedings on the execution, if one shall have been issued, or to stay the issuing of one, if none have been issued. And thereupon, by § 30 it is enacted, in almost the words of § 357 of the Code, " If no execution shall have been issued, the service of such order shall stay the issuing thereof ; and if an execution shall have been issued, and *not fully executed*, the service of such order shall stay the *further* execution thereof at whatever time such order shall have been made or served."

The perfecting of an appeal from the Marine Court, and the service of a certified copy of the undertaking on appeal, it is

declared in the Code, shall, if execution have been issued, "stay further proceedings thereon." We must, I think, hold that the construction and effect of these two statutes are the same. Whatever the legislature meant should be the effect of the service of " an order to stay proceedings on the execution," is now effected by the service of a certified copy of the undertaking on appeal. Staying " the further execution thereof," seems to me to have the same import as staying " further proceedings thereon."

The question presented in the present case is, whether the service of the copy undertaking on the appeal has the effect to discharge the execution, and take from the officer who has levied upon goods, all right to detain them under his levy; or, in other words, whether, upon such service and a demand of the goods levied on, he is bound to give up the goods to the defendant in execution.

Although the provisions of the Revised Statutes relating to the removal of judgments from courts of justices' of the peace by *certiorari*, or by appeal, (2 R. S. 255 and 258,) do not apply to the Marine or Justices' Courts in this city, (see p. 267, § 231,) yet, inasmuch as the review of judgments of all these courts is now regulated by the same act, (Code, chap. 5,) it is proper to notice that on allowance of a *certiorari* to the court of a justice of the peace, it was provided that the service of the *certiorari*, bond, and affidavit required, should stay the issuing of an execution, if none had been issued ; and if an execution had been issued, but not collected, the justice should grant a certificate which, on being served on the officer, should "suspend such execution," (2 R. S. 256, § 176 ; ) and on appeal, (under article 11th,) the appellant having given proper security, it is provided that " all further proceedings before the justice *shall be superseded ;*" and if execution have been issued, the justice shall give a certificate, upon the presentation of which, the constable "shall forthwith release the goods and chattels " on which the execution may have been levied, or the body, as the case may be. In this last case the legislature ex-

pressed their intention to discharge the levy unqualifiedly. (2 R. S. 259, §§ 192–93.) (See *Wilson* v. *Williams*, 18 Wend. 581, and *Seymour* v. *Dascomb*, 12 Ib. 584, both decided under these acts.) Now, however, all modes of reviewing such judgments are confined to the one appeal given by the Code ; and the act defines the effect of the appeal on the proceedings below, by directing, in the language before that time applied to writs of error as above recited, that it shall stay all *further proceedings* on the execution.

The natural and most obvious import of the direction to " stay all further proceedings thereon," would seem to be that the officer should take no further steps, but suffer all things to remain as they are when the service is made. It certainly does not, on its face, import a setting aside of the execution, nor an affirmative command to discharge the levy and return the goods taken.

I find no express adjudication upon the construction of the like provision of the Revised Statutes on this precise question.

In *Sherrill* v. *Campbell*, (21 Wend. 287,) the sheriff having taken a defendant on a *ca. sa.*, and committed him to jail, was served with notice of the issuing of a writ of error and an order staying all proceedings upon the execution, and all further proceedings under the judgment, pursuant to the Revised Statutes, § 30, above referred to, and he thereupon suffered the defendant to go at large. In an action brought against the sheriff, he was held liable for an escape ; but the opinion of the court is placed upon the ground that the arrest of the defendant on the *ca. sa.* was a *complete* execution of the process, and, therefore, staying the *further* execution of the writ, had no effect to discharge the defendant from custody.

In *Delafield* v. *Sandford*, (3 Hill, 473,) a motion was made to vacate the order made on the allowance of the writ of error, and to compel the sheriff to *proceed to a sale.*

The court held that the order was properly made, and that such order (under 2 R. S. 597, § 30) " *stays proceedings* even after levy," and that " there is no cause, therefore, for setting aside the order or *directing the sheriff to proceed.*"

Whether the court would have directed the sheriff in this last case to relinquish his levy and give up the property to the defendant, was a question not raised, nor was any intimation given in respect to the duty of the sheriff in such case. It would seem, however, to have been true in fact that the sheriff to that time retained the possession of the property.

While, therefore, these cases show that the sheriff is not bound to take any *further steps* under the execution pending the writ of error, they, neither of them, decide that the allowance of the writ of error and the order staying further proceedings have the effect to vacate or discharge what has been already done under it.

In my opinion the language of the statute and that of the Code is to be taken according to the meaning usually attached to such language in other proceedings in a cause, as a stay of proceedings until a motion be heard, or until security for costs be filed, or until the further order of the court, *i. e.*, that all proceedings of the party remain as they are, until the exigency contemplated by the order has happened.

When an appeal is taken, the stay may have the effect of a perpetual stay, if the judgment is reversed, because the foundation on which the execution rests is withdrawn.

That the legislature did not contemplate any other construction of the words, would seem inferable from the subsequent provisions of the Revised Statutes, wherein notice of the writ and the names and additions of the bail in error were required to be given, and the defendant in error permitted to except thereto. Whereupon, if the bail did not justify, the writ of error was, by the proper officer, superseded. In such case, I think, the execution might be further executed, and the officer proceed thereon without a new *fi. fa.* Otherwise, the security by a levy on property is lost, and no adequate security is had in the responsibility of bail in error who are unable to justify. So under the Code, § 341, a respondent on appeal to the Court of Appeals may except to the sureties in the undertaking, and the section is explicit, that if they or other sureties do not justify, "the appeal

Smith *v.* Allen.

shall be regarded as if *no* undertaking had been given," *i. e.*, by § 334, the appeal shall not be effectual for *any* purpose. Can it be doubted that in such case the sheriff, if he had already received the execution, would be bound to levy under it? Or if he had levied, would be bound to proceed and sell the property? I think not. I think we should hardly be warranted in saying that *staying all further proceedings*, in section 357, means, in this respect, more than it does in section 339. If the giving of the undertaking has the effect to destroy the power of the sheriff over the property, the whole object of security on appeal would often be lost. If the appellant was able to obtain sureties who were irresponsible, he would nevertheless obtain his object by gaining re-possession of his property, though the sureties did not justify. For the stay of proceedings under the 339th section takes effect when the undertaking is filed and served.

It is argued, that where an undertaking on an appeal from the Marine or Justices' Courts has been given, the cause is removed to this court, and the jurisdiction of the court below is ousted, and cannot afterwards be regained, since no remittitur issues from this court directing the court below to proceed therein after affirmance.

There is no difference in the effect of an appeal on the power of the court below to execute its own judgment between the Marine and Justices' Courts for this city and any other. If the undertaking be given, the proceedings are stayed. If not given, the court proceeds, notwithstanding the appeal, to issue execution, and the officer to levy and collect. So it was on writ of error, and so in all the courts. It is true that the respondent, on appeal, may have the judgment of this court, in affirmance of the judgment, and it may, perhaps, be that the whole judgment, with the costs of appeal, can be collected by execution issued out of this court, whether a transcript of the judgment has or has not been docketed with the county clerk. But if this be so, I perceive nothing which *requires* the respondent to proceed here, or forbids him from enforcing the judgment by execution from the court be-

low. The appeal to this court may be dismissed for various causes without any judgment, (whether an undertaking be or be not given,) and if that be done, the court below will cause its own judgment to be executed. An order dismissing the appeal would terminate the stay of proceedings, and the officer should, I think, proceed in the execution of the *fi. fa.*

It is further argued, that before the appeal is disposed of, the execution held by the officer will have expired, and, therefore, that it is unreasonable to suppose that the legislature intended that he should retain the custody of the property which he will never be able to apply to the execution. That his detention of the property in such case would be useless.

This argument assumes, that after levy the officer cannot sell after the return day named in the *fi. fa.* (*Vide* 3 Dev. 428; 5 Blackf. 590; Gra. Pr. 388, 406, 407.) If this were so, such detention is not necessarily useless. The appeal may be dismissed before the return day, and if so, there seems to be no reason why the plaintiff in execution should lose the benefit of the levy. Nor is it impossible that the appeal should be heard and decided before the return day, that is, within sixty days after the judgment, (Code, §§ 68 and 64, subd. 12,) although this may not always happen.

I conclude, therefore, that the appeal and the giving of the prescribed undertaking and service of the copy thereof has the effect to arrest the proceedings on the judgment below, and on the execution, if any have been issued, and to suspend further action under the same until the appeal is disposed of. But that it does not discharge a levy previously made, and make it the duty of the officer to return the property to the hands of the defendant in execution. And that in this case the defendant Jones, (the constable,) was rightfully in the possession of the property until the decision of the appeal, and no demand of the goods having been made, after the reversal of the judgment whereon the execution was issued, the plaintiff was not entitled to recover in this action. The judgment should, I think, be affirmed.

Smith *v.* Allen.

DALY, J.—The serving of the certified copy of the undertaking did not discharge the levy which had been previously made. It simply stayed further proceedings upon the execution. Section 357 is substantially the same as the previous provision in the Revised Statutes respecting writs of error; (2 R. S. 689, § 30, 3d ed. ;) and it never was supposed, under the Revised Statutes, that the filing of the bond and the service of the notice to stay, operated to supersede or discharge a levy made previous to the service of the order. Before the Revised Statutes, the bringing of a writ of error, and the putting in of bail to answer the debt or damages and costs, did not supersede a levy made before the writ of error was allowed, but the sheriff might go on and sell the property, returning the money into court, to abide the event of the writ of error ; (*Minturn* v. *Stevens,* Willes, 280 ; *Blanchard* v. *Myres,* 9 Johns. 66 ; *Kinne* v. *Witford,* 17 Johns. 34 ;) and the provision referred to in the Revised Statutes merely altered the existing law, by providing that if an execution was issued, the service of the order allowing the writ should stay the further execution of it, but it did not declare that the execution should be superseded. The 357th section of the Code has made no change in this respect. The judgment having been subsequently reversed, the plaintiff was entitled to have the property levied upon restored to him ; and if the defendant had refused to restore it upon a demand, after knowledge of the reversal of the judgment was brought home to him, he would have been liable on this form of action ; but no demand was shown, and the nonsuit was properly granted.

INGRAHAM, FIRST J., concurred.

Judgment affirmed.